Nathan Schwartz and Rose Schwartz v. Commissioner.
Schwartz v. Commissioner
Docket No. 22677.
United States Tax Court
1951 Tax Ct. Memo LEXIS 253; 10 T.C.M. (CCH) 400; T.C.M. (RIA) 51125; April 25, 1951
*253 Held, the property in question had a fair market value in 1928 of $3,000. Held, further, this amount subject to adjustments is deductible as a capital loss in 1945. Nathan Schwartz, pro se. William E. Murray, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of the petitioners for the year 1945 in the amount of $3,198.59. The issues are: 1. Did the petitioners sustain a deductible loss in the year 1945 because of the sale of certain property in Florida for delinquent taxes? 2. If a loss was sustained in 1945 from the sale of that property for delinquent *254 taxes, is it deductible as an ordinary or capital loss? Findings of Fact The petitioners reside in Brooklyn, New York. The return for the period involved was filed with the collector of internal revenue for the first district of New York. Nathan Schwartz, hereinafter referred to as petitioner, for some years prior to 1927 had been in the business of loaning money. He made these loans from time to time while traveling around the country. He sometimes took mortgages as security for these loans. These loans on mortgages were for investment purposes and it was only if the petitioner was not successful in collecting on the mortgage that he ever acquired any real estate. On January 7, 1927, the petitioners loaned $13,200 to G.B. and Lucile Stephenson of Florida and in exchange received certain notes and as collateral security a mortgage on a tract of land containing 49 lots in Leesburg, Florida, known as Dixie Heights. The mortgage was in the amount of $15,375.36, payable quarterly for two years with interest thereon at eight per cent. At the time the petitioners loaned the money on the property the city of Leesburg was contemplating the purchase of the tract in question for $19,000 *255 for the erection of a school building. For this reason the petitioners thought the land was sufficient security for a loan of $13,200. The Dixie Heights property was a vacant and unimproved tract in the city of Leesburg. After the loan and mortgage had been made the petitioners sold a half interest in the loan and mortgage to the brother-in-law of petitioner for $6,600, so their original investment in the loan was reduced to $6,600. A short time after the above loan was made a third party donated some land to the city on which to build the high school so the city abandoned whatever interest it had in Dixie Heights. The city's withdrawal from any plan of the school building on Dixie Heights tract greatly diminished the value of that property. About this same time the collapse of the Florida land boom also affected adversely the value of the property in question. As a consequence the mortgagors of the property could not make any of the payments. Instead of a foreclosure proceeding being brought, the mortgagors gave to the petitioners a deed to the property. Petitioners received this deed on April 12, 1928, from the mortgagors for $1 and other valuable consideration, the latter being *256 the satisfaction of the loan and mortgage. No payments had ever been made on the mortgage although payments were due quarterly for two years. The property was taken subject to a dredging lien on the property of $6,543.03 plus interest thereon at eight per cent from July 6, 1925. After 1932 the petitioners ceased paying taxes on the property. In 1932 the officials of Lake County, Florida, assessed the Dixie Heights property at $1,200 for county taxes. On May 3, 1933, the petitioners sold two lots in Dixie Heights to George C. Brown for $500, $100 of which was paid in cash with remainder of the $400 payable in yearly installments of $100. The parties executed an escrow agreement leaving the deed with a bank in Leesburg. The purchaser defaulted after two payments and the deed was returned to the petitioners. No other sale in connection with Dixie Heights property was ever made by the petitioners. In 1936 the petitioners deeded the city sufficient land for an extension of 12th Street which was thereafter completed. In exchange for that deed the city of Leesburg released the dredging lien assessment and certain taxes against the Dixie Heights property. On August 8, 1937, a new layout *257 subdivided Dixie Heights into 61 lots instead of the original 49. Prior and during their ownership of the property petitioners and Nathan Schwartz' brother-in-law were subject to various expenses or investments in this property as follows.. Date
Amount
Nature
January 7, 1927
$13,200.00
Original loan to the Stephensons
February 15, 1927
150.00
To William Ebert for securing loan or mortgage
July 5, 1927
50.00
To Hall & Austin, attorneys, for services con-
nected with the drawing up and recording the
Dixie Heights mortgage
March 31, 1928
6.25
To Acme Title Company for recertification of
deed
March 31, 1928
50.00
To W. Troy Hall, attorney, for services connected
with closing of deed
July 10, 1928
307.63
To the City of Leesburg for taxes
May 18, 1937
1.00
To Wylie Gillespie for blueprint of Dixie Heights
July 13, 1937
75.00
To Tim Sellers, attorney for services connected
with the extension of 12th Street across their
property
In 1937
129.00
To Wylie Gillespie for survey of Dixie Heights
and subdivision
October 10, 1941
100.00
To City of Leesburg for settlement of some taxes
Total investment and expenses
$14,068.88
Receipts reducing capital account
$300.00
From George C. Brown for 2 lots, Dixie Heights,
1933, 1934, 1935
Quitclaim deed
139.65
From one of the purchasers at the tax sale or
sales in 1946
Total receipts
$439.65
*258 Of these expenditures, $261.25 is properly chargeable to the capital account. During the period involved there was never any active development of Dixie Heights property. The petitioners did not improve the land by building houses, streets, sidewalks or invest any further money in it; instead the petitioners at various times tried to rent or sell the entire tract. Only a part of the property had access to water, gas, electricity or sewers. The petitioners made no efforts to develop the property by adding these improvements to the remaining lots. The only purchase and sale of real estate by the petitioners from 1935 through 1945 was that of a part of Palmora Park in Leesburg, Florida, which was purchased in 1926 for $4,000 and sold in 1945 for $400. Prior to 1945 the city of Leesburg sold certain tax certificates on the Dixie Heights property. The exact extent of these sales with the subsequent issuance of tax deeds is not evident from the record. On July 3, 1941, the Dixie Heights addition was turned over to the city attorney for foreclosure for delinquent taxes. For the year 1941 Lake County, Florida, assessed the value of the Dixie Heights addition at $1,200. Petitioners *259 regarded this assessment as excessive. In 1943 the petitioners sought to rent Dixie Heights property for cultivation. Pursuant to this desire petitioner wrote numerous letters to farmers and persons having contact in the agricultural field seeking to rent the land for either cash or a profit-sharing basis. In 1941 he wrote that he was "not so much interested in getting cash for the 60 lots I have, as I am in having the money bring in interest." In 1942 the city of Leesburg brought an action against the petitioners' property in question to foreclose tax liens. The petitioners raised the question of the validity of the taxes and the Florida Supreme Court ruled that the taxes were valid and that the city could proceed with its foreclosure. The city proceeded with its foreclosure which terminated in the actual sale of the property in March 1945 divesting petitioners of their title, vesting the fee to the property in 1945 to J. D. Manley, pursuant to a deed of the special master in the foreclosure dated March 5, 1945, which was properly recorded in the office of the clerk of Lake County. In 1946 the petitioner sold a title abstract to the purchaser at the tax sale for $139.65. In *260 their joint tax return filed for the year 1945 the petitioners stated as follows with respect to the loss deduction in question: "Schedule B - On January 27, 1927, I purchased 49 lots in Leesburg, Fla. for the creation of rentable property thereon, to acquire income and profit. These lots cost me $7,711.65. I have all my checks and records to prove my cost of this property at that time. On July 31, 1941, the City of Leesburg started foreclosure for the nonpayment of taxes, etc. I opposed the foreclosure; but, nevertheless, a sale was had by the City of Leesburg on March 5, 1945 and sold to an outsider, and my entire investment was lost." In the statement attached to the notice of deficiency the respondent stated as follows: "(a) Loss from sale of property of $7,711.65 claimed on the return is disallowed for the reason that the loss was not incurred within the taxable year 1945 and does not constitute a proper deduction for such year." The property in question had a market value in 1928 of $3,000. Opinion HILL, Judge: Issue 1. The first question is whether petitioners sustained a deductible loss in the year 1945 because of the sale in that year of the Dixie Heights addition *261 for delinquent taxes. The petitioners argue that they sustained a deductible loss of $7,711.65 in 1945 because of the foreclosure sale of the property involved on March 5, 1945. The respondent contends that petitioners may not be allowed any deduction for the year 1945 because (1) petitioners have not proved the fair market value of the property when they acquired it in 1928, and (2) the petitioners have failed to prove in exactly what year the property was sold. Where a creditor, such as the petitioner Nathan Schwartz, accepts a voluntary conveyance of property, pledged as security for a debt the receipt of the property so conveyed to the extent of its fair market value at that time, (here the year 1928 when the property in question was voluntarily conveyed to petitioners) shall be considered as the receipt of payment of the obligations satisfied. If the value of the property is less than the amount of the obligation the difference is deductible in that year as a bad debt. If the property is later sold, such as is true here, the basis for determining gain or loss is the fair market value of the property at the time of acquisition (here the time of acquisition was 1928.) Commissioner v. Spreckels, 120 Fed. (2d) 517; *262 Regulations 111, section 29.23 (k)-3; [1]I.T. 3548, 1942-1 C.B. 74. *263 We do not agree with the respondent's contention that petitioners have not proved the 1928 market value of the Dixie Heights addition, but neither do we agree with petitioners' contention that it had a market value at that time of some $23,000. We have concluded after a consideration of all the evidence submitted that the property had a market value in 1928 of $3,000 and that that is the basis subject to certain adjustments for determining petitioners' loss upon the sale of the property in 1945. See Cohan v. Commissioner, 39 Fed. (2d) 540. It is true that in January 1927 the petitioners took a mortgage on the property in the amount of $15,375.36. However, a determination of fair market value must be based upon "the price at which the property would change hands between a willing seller and a willing buyer, neither being under a compulsion to buy or sell." See Regulations 105, section 81.10. No competent testimony as to the price in 1928 between a willing seller and a willing buyer was adduced at the hearing. There were certain self-serving declarations by the petitioner that the property in question had a fair market value of some $23,000 in 1928. However, the facts *264 show that in that year the Florida land boom had collapsed, that there was a dredging lien against the property in the amount of $6,543.03, plus interest of eight per cent from July 6, 1925, and that city of Leesburg no longer proposed buying the property for a school site, which was the principal reason why petitioner's felt his loan to the Stephensons was a sound investment. In 1941 after the property had been improved to the extent that 12th Street was extended through the property and was paved, Lake County assessed the property at a value of only $1,200 and its assessed valuation in 1932 was the same. We realize that the assessed valuation is not determinative but we think that under the circumstances here it is helpful in determining a fair market value for 1928. Hence, upon all the facts, we conclude that petitioners have failed to prove the property had a fair market value of more than $3,000 in 1928. Under the first issue the respondent also contends that no deduction is allowable for the year in question because petitioners have "failed to prove in exactly what year or years the tax sale or sales of this property took place." We do not agree with respondent's contention. *265 On March 5, 1945, a special master in chancery conveyed all of the Dixie Heights addition to another person. This sale was recorded in the proper local office on April 14, 1945. It is true that certain tax certificates for the property in question were given to others prior to 1945. But under the law of Florida after the purchase of one of those tax certificates the original owner has two years in which to redeem. Chapter 173.03, Florida Statutes, 1949. See also same section of Florida Statutes, 1941. In the case at bar, there was a sale of the property and under the law of Florida there is no right of redemption after such a sale. Sections 173.01-173.14, [2] supra. After that sale and the issuance of a deed by the special master, such as happened here, fee simple title is vested in the purchaser and the former owner's right of redemption is cut off. It is thus apparent that after the tax deed was issued in March 1945 petitioner was deprived of any property rights he had in the Dixie Heights addition and that it was that event which gave rise to any deduction for a loss here. *266 The respondent also contends that the petitioner did not divest himself of all title when he sold the quitclaim deed to the property in 1946 for $139.65. Petitioner did not sell a quitclaim deed in 1946, instead he sold his abstract of title to the property in that year. This in no way amounted to the sale of any title on the part of petitioner. Indeed he could not have sold any interest in the property because the fee title had been sold by the city of Leesburg in the previous year. We therefore hold that any loss which petitioner sustained as a result of this transaction is properly deductible in 1945. Issue 2. The respondent also contends that any loss sustained on the sale of the Dixie Heights addition for delinquent taxes in 1945 was a sale of a capital asset within the meaning of section 117, Internal Revenue Code, and therefore that any deduction must be taken under the provisions of that section covering capital losses. On this issue petitioners argue, first of all, that "The respondent is estopped and should not be permitted to urge a deficiency on the ground that the loss was a capital loss, * * * [as] this issue was not raised by the petition. *267 " We do not agree with that contention. We think the explanation of adjustment attached to the notice of deficiency wherein respondent explained that the "Loss from sale of property of $7,711.65 claimed on the return is disallowed for the reason that the loss * * * does not constitute a proper deduction for such year" was sufficient to apprise the petitioners that this issue was in the case. The petitioners assigned as error in their petitioner that reason for the disallowance of the deduction in question and the respondent denied such error in his answer. Indeed the record discloses that petitioner was aware of this contention of respondent prior to the hearing at which the respondent mentioned the issue in his opening statement. This is disclosed by the following colloquy between petitioner and the Court: "THE WITNESS: The whole question was - "THE COURT: Was the question whether it was capital gain? "THE WITNESS: That is right, they raised that the last week of the conference I had with them. Up to that it was only a question of whether I had a right of redemption." Moreover, the question of the character of the deduction inhered in the character of the loss. After that *268 discussion the petitioner was allowed to present evidence attempting to show that he was a real estate dealer. Here then the petitioner was not misled in the presentation of his case and we hold that the issue was properly before the Court. Millar Brainard, 7 T.C. 1180. See also Cutcliffe v. Commissioner, 163 Fed. (2d) 891. Whether any loss is an ordinary or capital loss depends upon whether petitioner was a real estate dealer or was holding the property in question primarily for investment purposes. The courts have adopted several well recognized tests determining whether a taxpayer was engaged in the real estate business for purposes of section 117 of the Code. None of these tests are regarded as determinative and each individual case must be decided on its own facts. W. T. Thrift, Sr., 15 T.C. 366; Thomas E. Wood, 16 T.C. - (January 29, 1951). Some of these considerations are the reason for the taxpayer's acquisition of the property and disposal of it; the continuity of sales or sales related activity over a period of time; the number, frequency and substantiality of sales; and the extent to which the owner or his agents engaged in sales *269 activities by developing or improving the property, soliciting customers, and advertising. Boomhower v. United States, 74 Fed. Supp. 997; W. T. Thrift, Sr., supra; and Thomas E. Wood, supra. Applying these tests here we find, first of all, that petitioner did not acquire the property for the purpose of dealing in real estate. Rather he obtained it because one of his debtors failed to keep up the payments on a loan. And although we are convinced that petitioner "may have been willing to sell the land acquired from [the Stephensons] at any time * * * there was no such continuity, number, or frequency of real estate transactions by petitioner as to justify a holding that he was engaged in the real estate business." Thomas E. Wood, supra, and cases cited therein. Petitioner never held himself out as a real estate agent and he never had a real estate license. An indication of the purpose for which the property was held is gained from a letter which petitioner wrote in 1941. In that he stated that he was "not so much interested in getting cash for the 60 lots I have, as I am in having the money bring in interest." Another indication of his intention can *270 be gained from petitioner's statement in the joint tax return filed for 1945 wherein he stated "I purchased 49 lots in Leesburg, Fla. for the creation of rentable property thereon, to acquire income and profit."Thus it can readily be seen that petitioner was not engaged in the real estate business; or, in other words, that he was not holding the property primarily for sale to customers in the ordinary course of his trade or business. It is therefore held that the amount of $3,000 plus adjustments for expenses properly chargeable to the capital account and income received from the property, as set forth in the findings, is deductible in 1945 as a capital loss under the provisions of section 117 of the Code. Decision will be entered under Rule 50. Footnotes
1. Sec. 29.23 (k)-3. Uncollectible Deficiency Upon Sale of Mortgaged or Pledged Property. - If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, the mortgagee or pledgee may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it has become wholly or partially worthless. In addition, if the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition. Accrued interest may be included as part of the deduction only if it has previously been returned as income.↩
2. Chapter 173.10 provides: * * * special master's conveyance. - * * * Any and all conveyances by the special master shall vest in the purchaser the fee simple title to the property so sold, subject only to such liens for state and county taxes or taxing districts whose liens are of equal dignity, and liens for municipal taxes and special assessments, or installments thereof, as are not directed by the decree of sale to be paid out of the proceeds of said sale.↩